IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAMES R. REIS 1999 REVOCABLE LIVING TRUST and JAMES R. REIS, Trustee, | § § § | |
| | § | |
| Plaintiffs, Counterclaim Defendants, | § § | |
| | § | |
| V. | § | |
| | § | No. 3:18-cv-87-M |
| | § | |
| CITIBANK, N.A., | § | |
| | § | |
| Defendant, Counterclaim Plaintiff, | § § | |
| | § | |
| v. | § | |
| | § | |
| JAMES R. REIS, in his individual capacity, and I. SAMUEL REYES, | § § | |
| | § | |
| Third-Party Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Both third-party defendants filed motions to dismiss, which were referred to the

undersigned United States Magistrate Judge for recommendation by United States

Chief District Judge Barbara M. G. Lynn. *See* Dkt. No 21-1 (under seal) & 23 (redacted).

Third-Party Defendant I. Samuel Reyes ("Reyes") filed a motion to dismiss for lack of

personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), *see* Dkt. No. 36,

and Third-Party Defendant James R. Reis, in his individual capacity ("Reis"), filed a

motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure

12(b)(6), *see* Dkt. No. 41.

The undersigned now issues the following findings of fact, conclusions of law, and recommendation.

## Background

This case is based on credit card payments received from a trust's checking account.

Reis and Reyes were married in California in 2008 and thereafter lived in Texas and Arizona. *See* Dkt. Nos. 21-1 & 23 at 14. Prior to their marriage, Reis and Reyes were friends and in a personal relationship with each other. *See id.*

Reis established the James R. Reis 1999 Revocable Living Trust (the "Reis Trust") in 1999. *See* Dkt. No. 23 at 15. Reis is the sole Trustee of the Reis Trust and Reyes was a beneficiary. *See id.*

Two Citibank credit card accounts were issued to Reyes (the "Citibank Accounts"). *See id.* at 14, 28, 42. Reyes is the primary card member for the Citibank Accounts, and Reis was an authorized user until January 7, 2017. *See id.*

In December 2005, Reis moved the Reis Trust's checking account to Frost Bank (the "Frost Account"). *See id.* at 16. Frost Bank is located in San Antonio, Texas. *See* Dkt. No. 49-1 at 33. The Account Agreement includes a Texas choice of law provision and provides for arbitration in Texas. *See id.* at 32-36.

On January 9, 2009, Reis added Reyes as an authorized user of the Reis Trust's checking account at Frost Bank so that Reyes could pay their expenses out of the Frost

Account. *See id.* at 14, 28, 42; Dkt. No. 49-1 at 19.

Starting in 2009, Reis and Reyes began paying the Citibank Accounts through both paper checks and Citibank's online bill payment service using funds from the Frost Account and Citibank's online bill payment service. *See id.*

Reyes moved to Arizona in 2012 and he is currently an Arizona resident. He has not been domiciled in Texas since 2012, and he does not own any real or personal property in the state of Texas. *See* Dkt. No. 38 at 4.

Payments on the Citibank Accounts originating from the Frost Account were made by Reyes and Reis from 2009 through 2017. *See* Dkt. No. 23 at 14, 28, 42; Dkt. No. 49-1 at 19.There is a dispute between Reis and Reyes as to whether Reyes had authority to use the funds in the Frost Account in 2016 when Reyes used the account to pay his Citibank credit card. *See* Dkt. No. 46 at 3. During periods of time when Reis claims that he and Reyes were broken-up and not co-habitating, Reyes continued to use the Citibank Accounts for expenses to maintain homes owned by the couple, pay his other living expenses and attorneys' fees. Reis also wrote checks from the Frost Account to pay the Citibank Accounts. *See See* Dkt. No. 23 at 16-17.

Reis filed a petition for divorce against Reyes in Dallas County, Texas on February 25, 2016. *See* Dkt. No. 37 at 5, 11; Dkt. No. 38 at 4.

On January 7, 2017, Reis contacted Citibank and advised that payments made on the Citibank Accounts from the Reis Trust checking account were not authorized and that Reyes (the primary card member on the Citibank Accounts) had stolen Reis'

checking account number from settlement checks he had sent him. *See id.* At that time, Reis did not disclose that he was married to Reyes. At no point prior to January 7, 2017, did the Reis Trust or Reis inform or otherwise notify Citibank that any payment made from the Frost Account for the Citibank Accounts was unauthorized or fraudulent or that it was not authorized to accept payments from the Frost Account. *See id.* at 17.

Citibank refunded $75,085.67 to the Frost Account, which corresponds to the sum of payments from the Reis Trust checking account to Citibank on the Citibank Accounts from November 25, 2016 through January 5, 2017. *See id.*

The Citibank Accounts then went into default. When the Third-Party Complaint was filed, one of the Citibank accounts had an outstanding balance due and owing of $61,388.66 and the other had an outstanding balance due and owing of $69,424.64. The combined amount due and owing on the two Citibank accounts is $130,813.30. *See id.*

On March 15, 2017, Reyes initiated a lawsuit against Reis, individually and as Trustee of the Reis Trust, and others in Dallas County state court, alleging claims related to a transaction involving GAINSCO stock. *See* Dkt. No. 37 at 5; Dkt. No. 38 at 6-16.

Reis brought this lawsuit against Citibank in Dallas County state court on December 11, 2017. *See* Dkt. No. 1-5. Reis sought to recover $225,546.61 from Citibank. That amount represents credit card payments received by Citibank from the Reis Trust's checking account at Frost Bank from February through November of 2016, which were credited to Reyes's Citibank credit cards. *See id.* Reis claims that those

payments were made by Reyes without his authority or consent and constituted theft or conversion of funds. *See id.* Reis seeks to hold Citibank liable for Reyes' alleged wrongful use of the Frost Bank account funds because Reyes processed the withdrawals from the Frost Account using Citibank's online bill payment website. *See id.* In his Original Petition, Reis did not disclose his relationship with Reyes. *See id.*

On January 10, 2018, Reis filed a lawsuit against Reyes in Arizona state court alleging claims including conversion, fraudulent misrepresentation and unjust enrichment, based on Reyes' alleged unauthorized use of the Frost Account to pay Reyes' Citibank credit card accounts. *See* Dkt. No. 49-4 at 63-76.

Citibank removed this case to this Court on January 12, 2018. *See* Dkt. No. 1.

Reis and Reyes were divorced in Dallas County, Texas on January 24, 2018. *See See* Dkt. Nos. 21-1 & 23 at 18. They entered a confidential settlement agreement incident to divorce ("AID") in which they agreed to release certain claims against each other, resolve the GAINSCO stock case, and dismiss with prejudice the Arizona action. The only reference in the AID to Citibank is a clarification that Reis was not releasing his ability to pursue claims against Citibank in this lawsuit. *See See* Dkt. Nos. 21-1 & 23 at 18; Dkt. No. 37 at 5, 11; Dkt. No. 38 at 4; Dkt. No. 48 at 4.

On November 2, 2018, Citibank amended its answer, asserted counterclaims against the Reis Trust and Reis in his role as Trustee, and asserted third-party claims against Reis, individually, and Reyes. *See* Dkt. No. 23. Citibank asserts breach of contract and quantum meruit/unjust enrichment claims against the Reis Trust, Reis

and Reyes. It asserts fraud and fraud by nondisclosure claims against Reyes. It also seeks recovery of attorneys' fees from the Reis Trust, Reis and Reyes. *See id.*

Reyes filed a motion to dismiss for lack of personal jurisdiction, *see* Dkt. No. 36, and Citibank filed a response, *see* Dkt. No. 46.

Reis filed a motion to dismiss for failure to state a claim, asserting that Citibank has failed to allege a claim against him individually. *See* Dkt. No. 41. Citibank filed a response, *see* Dkt. No. 45, and Reis filed a reply, *see* Dkt. No. 51.

The undersigned now concludes that both motions to dismiss should be granted.

**Legal Standards**

I.    <u>Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction</u>

When a non-resident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the nonresident. *See Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014); *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). If the court decides the matter without an evidentiary hearing, the plaintiff may meet its burden by presenting a prima facie case for personal jurisdiction. *See Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 592 (5th Cir. 1999); *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994). A federal district court may exercise personal jurisdiction over a non-resident defendant if (1) the long-arm statute of the forum state permits the exercise of personal jurisdiction over the defendant and (2) the exercise of jurisdiction by the forum state is consistent with due process under the United States Constitution. *See Mullins v.*

*TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009). "As the Texas long-arm statute extends as far as constitutional due process allows, we only consider the second step of the inquiry." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009).

The due process component of personal jurisdiction requires two elements: (1) the nonresident must have some minimum contact with the forum such that the he or she could anticipate being haled into the courts of the forum state, and (2) it must be fair or reasonable to require the nonresident to defend the suit in the forum state. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474-78 (1985); *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). The Due Process Clause ensures that persons have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King*, 471 U.S. at 472 (internal quotation marks omitted). Personal jurisdiction must be assessed on an individual-defendant basis. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980).

First, to establish minimum contacts with the forum, a non-resident defendant must do some act by which he "purposefully avails himself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 474-75 (internal quotation marks omitted). But the unilateral activity of one asserting a relationship with the non-resident defendant does not satisfy this requirement. *See id.* at 474; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984).

Second, in determining whether the exercise of jurisdiction is appropriate, the

United States Supreme Court has focused less on presence in the forum state as a means to establish jurisdiction and looked increasingly to whether a defendant's purposeful contacts with the forum state make it reasonable to require the defendant to defend the particular suit in that forum. *See Quill Corp. v. North Dakota*, 504 U.S. 298, 307 (1992). Thus, "[i]n determining whether or not exercise of jurisdiction is fair and reasonable, defendants bear the burden of proof and 'it is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown.' " *McFadin*, 587 F.3d at 759-60 (quoting *Wien Air Alaska, Inc., v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999) ).

Five factors guide a court's analysis of whether exercising personal jurisdiction is fair and reasonable: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *Luv n' care, Ltd. v. Insta-Mix, Inc*., 438 F.3d 465, 473 (5th Cir. 2006).

Two types of personal jurisdiction may be exercised over a non-resident defendant: specific jurisdiction and general jurisdiction. Specific jurisdiction exists if the cause of action is related to, or arises out of, the defendant's contacts with the forum state and those contacts meet the due process standard. *See J.R. Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 871 (5th Cir. 2000). "When a court exercises personal jurisdiction over a defendant based on contacts with the forum related to the particular

-8-

controversy, the court is exercising 'specific jurisdiction.' " *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986) (citations omitted). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). "First, the relationship must arise out of contacts that the 'defendant himself' creates with the forum State." *Id*. at 1122 (emphasis in original) (quoting *Burger King*, 471 U.S. at 475). "Second, [the] 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* (citations omitted). Specific jurisdiction is a "claim-specific inquiry," so a plaintiff must establish specific jurisdiction for each claim asserted. *Dontos v. Vendomation NZ Ltd.*, 582 F. App'x 338, 343 (5th Cir. Sept.16, 2014) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006) ).

General jurisdiction, on the other hand, may be found when the nonresident's contacts with the forum are "continuous and systematic," even though the claim is unrelated to those contacts. *Helicopteros Nacionales*, 466 U.S. at 41-16. The Supreme Court has observed that the proper consideration when determining general jurisdiction is "whether that corporation's 'affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State.' " *Daimler AG v. Bauman,* 134 S. Ct. 746, 761 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) ) (alteration in original). The Supreme Court held that, as to a corporation, "the place of incorporation and principal place of

business" are where it is "at home" and are thus paradigm bases for jurisdiction. *Id.* at 760. It is, therefore, "incredibly difficult" to establish general jurisdiction in a forum other than the place of incorporation or principal place of business. *Monkton Ins. Servs.*, 768 F.3d 429, 2014 WL 4799716, at *2. A nonresident that merely does business with Texas businesses or customers will not be subject to general jurisdiction here unless it also has a lasting physical presence in the state. *See Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999); *see also Johnston*, 523 F.3d at 614 (general jurisdiction not conferred simply by advertising within a state or traveling to the state at regular intervals).

Under both specific and general jurisdiction analyses, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum [s]tate." *Burger King*, 471 U.S. at 474 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) ). The "purposeful availment" requirement of the minimum contacts inquiry "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts ... or of the 'unilateral activity of another party or a third person.' " *Id.* at 475 (citations omitted). A plaintiff must establish a substantial connection between the non-resident defendant and the forum state. *See Jones v. Petty–Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 n.9 (5th Cir. 1992).

II.    <u>Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim</u>

In deciding a Federal Rule of Civil Procedure 12(b)(6) motion, the Court must

"accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205–06 (5th Cir. 2007). To state a claim upon which relief may be granted, Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, Plaintiffs must allege more than labels and conclusions, and, while a court must accept all of the Plaintiffs' allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.* But, "to survive a motion to dismiss" under *Twombly* and *Iqbal*,

a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that Plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. ____, 135 S. Ct. 346, 347 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *accord N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) ("To survive a Rule 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but it must provide the plaintiff's grounds for entitlement to relief – including factual allegations that, when assumed to be true, raise a right to relief above the speculative level." (footnote and internal quotation marks omitted)).

The United States "Supreme Court has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (quoting *Johnson*, 135 S. Ct. at 347, and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S. Ct. at 346.

A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-

99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "Although the [United States Court of Appeals for the] Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

In addition, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"). And "[t]here is nothing improper about the district court considering the content of briefing that supports or opposes a motion under Rule 12(b)(6) when deciding such a motion," where, although "[w]hen matters outside the pleadings are presented to the court in connection with a motion under Rule 12(b)(6), the motion must be treated as a Rule 56 motion for summary judgment and appropriate notice given to the parties," the United States Court of Appeals for the Fifth

-13-

Circuit has held "that briefs and oral arguments in connection with the motion ... are not considered matters outside the pleadings for purposes of conversion." *Turnage v. McConnell Techns., Inc.*, 671 F. App'x 307, 309 (5th Cir. 2016) (per curiam) (internal quotation marks and citations omitted).

District courts within the Fifth Circuit have divided as to whether a fair-notice standard continues to apply to pleading affirmative defenses or whether *Twombly* and *Iqbal*'s plausibility standard applies, and the "Fifth Circuit has not addressed this issue." *Brush v. Wells Fargo Bank, N.A.*, 911 F. Supp. 2d 445, 484 (S.D. Tex. 2012). But, whatever may be the standard for pleading an affirmative defense under Federal Rule of Civil Procedure 8(b) – a question with which the Court is not presently confronted – the *Twombly* and *Iqbal* plausibility standard applies to pleading any "claim for relief" under Rule 8(a)'s requirements – whether as a plaintiff's claim or a defendant's counterclaim. *See* FED. R. CIV. P. 8(a); 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. § 1205 (3d ed. 2013) ("Rule 8(a) applies not only to an original claim contained in a complaint, but also to a pleading containing a claim for relief that takes the form of a counterclaim, cross-claim, or third-party claim."); *see generally Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 576-77 (5th Cir. 1996) (affirming a Rule 12(b)(6) dismissal of a counterclaim).

**Analysis**

I.    <u>Reyes' motion to dismiss for lack of personal jurisdiction should be granted.</u>

The Court will limit its analysis to specific jurisdiction because Citibank does not

dispute that Reyes lacks the necessary "continuous and systematic" contacts with Texas to be subject to general jurisdiction in this forum. *See* Dkt. No. 48 at 5.

Reyes contends that he is not subject to specific jurisdiction in Texas because there are no suit-related Texas contacts that are relevant to Citibank's third-party claims against him in this lawsuit. *See* Dkt. No. 37. Reyes declares that since he moved to Arizona in 2012, he has not performed any transactions with respect to Citibank or Frost Bank in the state of Texas. Instead, all transactions associated with any banking or credit card transactions conducted by Reyes since he moved to Arizona in 2012 would have been performed physically in Arizona, or via online internet while he was physically located in Arizona. This includes but is not limited to any conduct that could be construed as "any payment of any accounts, any administrative functions necessary to use Citibank or Frost Bank services, any administrative functions necessary to pay either company, entering into any contracts necessary to use Citibank or Frost Bank Services, accessing any banking or credit card information with these companies, and any exercise or authority with respect to any checking account." Dkt. No. 38 at 4.

Relying heavily on *Walden v. Fiore*, 571 U.S. 1115 (2014), Reyes argues that he did not initiate or establish the forum contacts on which Citibank seeks to establish specific jurisdiction. In *Walden* the plaintiffs – professional gamblers who were traveling from San Juan, Puerto Rico to Las Vegas, Nevada – were stopped by the defendant, a deputized DEA agent, in the Atlanta, Georgia airport. *See id.* at 1119. The defendant seized a large sum of cash that the plaintiffs were carrying, which comprised

the plaintiffs' gambling "bank" and winnings. *See id.* The plaintiffs filed suit against

him in Nevada, but the Court held that a Nevada court could not exercise personal

jurisdiction over the defendant. *See id.* at 1119-21. *Walden* illustrates the proposition

that personal jurisdiction must be premised on the defendant's contacts with the forum,

not on his contacts with people who incidentally happen to be from that forum. *See id.*

at 285. It also reaffirms the principle that courts may assert jurisdiction "over

defendants who have purposefully 'reach[ed] out beyond' their State and into another

by, for example, entering a contractual relationship that 'envisioned continuing and

wide-reaching contacts' in the forum State." *Id.* (alteration in original) (quoting *Burger

King*, 471 U.S. at 479-80). Obviously, the defendant in Walden did no reaching out of

any kind—he seized cash from the plaintiffs in Atlanta, and it just so happened that the

plaintiffs resided in Nevada. *See id.* at 1120. He certainly envisioned no continuing,

extensive relations between himself and the plaintiffs or any other resident of Nevada,

and benefitted in no way from the plaintiffs' residence there. *See SpinSci Tech., LLC v.

J Projects, LLC*, No. 3:18-cv-344-D, 2018 WL 4281554, at *7 (N.D. Tex. Sept. 7, 2018)

(discussing *Walden*).

Citibank counters that Reyes' reliance on *Walden* is misplaced and argues that

even though Reyes may have been located in Arizona when he wrote the checks or made

an online payment, he directed contacts to Texas by using his Citibank cards to pay

Texas lawyers, to pursue litigation in Texas, and to cause a Texas bank (Frost) to send

money out of a Texas-based checking account (the Frost Account) to Citibank on at least

24 occasions.

Here, Reyes' contacts with Texas are directed more to his relationship with Reis and it is merely fortuitous that the checking account he used to pay his credit card bills is with a Texas bank. Those contacts are too random to amount to minimum contacts with the forum state sufficient to confer specific personal jurisdiction. *See Walden*, 571 U.S. at 285-86.

Likewise, the fact that Reyes filed the GAINSCO stock lawsuit in Texas does not subject him to specific personal jurisdiction in this case. Although the Reis Trust is involved in the GAINSCO stock lawsuit, that lawsuit is not related to this one. *See* Dkt. No. *See* Dkt. No. 37 at 5; Dkt. No. 38 at 6-16.

Moreover, it would offend traditional notions of fair play and substantial justice to hale Reyes into court in Texas based solely on the acts of paying his credit card bills from the trust checking account. Those acts are too random, fortuitous, or attenuated to warn Reyes that he is subject to litigation in Texas.

Accordingly, for all of these reasons, the undersigned concludes that Reyes is not subject to specific personal jurisdiction in Texas and recommends that Reyes' motion to dismiss for lack of jurisdiction be granted.

II.    Reis' motion to dismiss for failure to state a claim should be granted.

Reis, in his capacity as trustee, is the original plaintiff in this lawsuit. In its third-party action, Citibank states that "to the extent the Court were to determine that with respect to the affirmative claims asserted by Citibank [against] Mr. Reis must be separately brought before the Court in his individual capacity (i.e. not as the Trustee

-17-

of the Reis Trust), Mr. Reis is also named a Third-Party Defendant." Dkt. No. 21-1 at 14. Citibank asserts third-party claims against Reis in his individual capacity for breach of contract or, alternatively, quantum meruit/unjust enrichment.

Reis contends that Citibank failed to state a claim against him individually. Specifically, he argues that the breach of contract claim must fail because he did not enter into a contract with Citibank and that the quantum meriut/unjust enrichment claim must fail because the dispute arises from a contract. *See* Dkt. No. 42.

    A.    <u>Citibank has failed to state a breach of contract claim.</u>

        1.    <u>There is no contract between Citibank and Reis.</u>

Citibank alleges that Reyes is the primary card member for the Citibank Accounts and that by using the Citibank Accounts, Reyes agreed to be bound by the terms and conditions governing the Citibank Accounts. *See* Dkt. No. 21-1 at 14. Citibank attached copies of the terms and conditions governing the Accounts to its Third-Party Petition. *See id.* at Exhibits A&B (the "Card Agreements"). Citibank also alleges that Reis was an authorized user on the Citibank Accounts and that as an authorized user, he also agreed to be bound by the terms and conditions governing the Citibank Accouonts. *See id.* at 15.

The Card Agreements provide that the card member, not the designated authorized user, is responsible for complying with the Card Agreements. *See* Dkt. No. 23 at Ex. A, p. 3. They also provide that, even though the card member may add authorized users, the card member, and not the authorized user, must pay for all

charges by the authorized user. *See id.* at p. 6-7.

Citibank fails to identify any facts to establish that Reis owed any contractual obligation to Citibank, including paying it for the amounts due and owing under the Card Agreement, where, on the facts as alleged, the only contract was that between Reyes and Citibank.

For all of these reasons, Citibank has failed to state a breach of contract claim, and that claim should be dismissed.

2.    <u>Citibank fails to plead community property liability.</u>

Citibank also argues that Reis is liable under the Card Agreements because the amounts due on the Citibank Accounts were incurred during Reis and Reyes's marriage and are thus community property. But the Texas Family Code provides that community property is not subject to liability unless it is provided for in Section 3.201:

> (a)    A person is personally liable for the acts of the person's spouse only if:
>    (1)    the spouse acts as an agent for the person; or
>    (2)    the spouse incurs a debt for necessaries as provided by Subchapter F, Chapter 2.
> (b)    Except as provided by this subchapter, community property is not subject to a liability that arises from an act of a spouse.
> (c)    A spouse does not act as an agent for the other spouse solely because of the marriage relationship.

TEX. FAM. CODE § 3.201. The Texas Supreme Court has explained that "[m]arriage itself does not create joint and several liability." *Tedder v. Gardner Aldrich, LLP*, 421 S.W.3d 651, 655 (Tex. 2013). Yet that is the theory that Citibank argues. And Citibank fails to allege any facts to show that Reis is liable under Section 3.201.

B.    Citibank fails to state a claim for quantum meruit/unjust enrichment.

Citibank alleges Reis benefitted from the "money on a revolving credit card account, which provided benefit to the Reis Trust, Mr. Reis and/or Mr. Reyes." Dkt. No. 21-1 at 20. The extension of credit underlying this claim is predicated on the Card Agreement between Reyes and Citibank.

Generally, when a valid express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory like quantum meruit or unjust enrichment because parties should be bound by their express agreements. *See First Union Nat'l Bank v. Richmond Capital Partners, L.P.*, 168 S.W.3d 917, 931 (Tex. App. – Dallas 2005, no pet.); *see also Cristobal v. Allen,* No. 01-09-126-CV, 2010 WL 2873502, at *5 (Tex. App. – Houston [1st Dist.] 2010, no pet.) ("Quantum meruit is an equitable remedy that is independent of an express contract. A party may recover under this theory when no express contract governs the services rendered or materials furnished.").

Citibank alleges that, "[a]t Mr. Reyes' request, Citibank loaned the Reis Trust, Mr. Reis and or Mr. Reyes money on a revolving credit card account" and, that "[d]espite receiving and accepting benefit from Citibank, the Reis Trust, Mr. Reis and/or Mr. Reyes have failed to reimburse or compensate Citibank." Dkt. No. 21-1 at 20-21. Although Citibank pleads its quantum meruit/unjust enrichment claim in the alternative, it also pleads that the claim is based on the Cardholder Agreement between Reyes and Citibank. Thus, the quantum meruit/unjust enrichment claim would be precluded because it is governed by an express contract.

Citibank has also failed to allege any facts to establish how or when Reis benefitted from the loan of money on Reyes' credit card accounts.

Accordingly, for all of these reasons, Citibank has failed to state a claim for quantum meruit/unjust enrichment and that claim should be dismissed.

C.    <u>Citibank should be allowed to replead its third-party claims against Reis</u>.

Citibank's request for leave to amend its third-party complaint if the Court determines that it has not stated claims against Reis individually should be granted.

When a claim is subject to dismissal under Rule 12(b)(6) for failure to state a claim, district courts often afford plaintiffs an opportunity to cure pleading deficiencies, unless it is clear that the defects are incurable or the plaintiffs reveal that they are unwilling or unable to amend in a manner that will avoid dismissal.

Here, Citibank has not yet amended its third-party complaint, and it might be able – and has asked for a chance – to allege a better case against Reis individually. Citibank should therefore be afforded an opportunity to its third-party complaint to allege sufficient facts to state a claim against Reis in his individual capacity.

## Recommendation

Third-Party Defendant I. Samuel Reyes' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) [Dkt. No. 36] should be granted without prejudice.

Third-Party Defendant James R. Reis' Motion to Dismiss for Failure to State a Claim [Dkt. No. 41] should be granted without prejudice.

The Court should grant Citibank 21 days from the date of any order adopting these Findings, Conclusions, and Recommendation in which to file an amended third-

party complaint against Reis. If Citibank fails to do so, its third-party claims against Reis should be dismissed with prejudice without further notice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: March 29, 2019

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE